**Jack Virgil JOHANTGEN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 8, 1978.

"any other person present believed to be involved in the illegal use of, possession of, or trafficking in controlled substances." The warrant was executed that same day by four police officers. When they arrived at the Driver residence, the only persons on the premises were a woman and a child. The officers commenced the search and some 20 minutes later Driver arrived, accompanied by appellant. Driver was searched and a quantity of heroin was found on his person. At that time appellant was searched, and one packet of heroin weighing 1/56 of an ounce was found in his front pants pocket.

In our analysis of the admissibility of this evidence, we must first determine if the search of appellant's person was within the scope of the warrant. To phrase the question differently, was the language in the warrant commanding the search of "any other person present believed to be involved in the illegal use of, possession of, or trafficking in controlled substances" sufficient to cover the search of the appellant's person? The answer to this question must be "no."

The Fourth Amendment to the United States Constitution provides that ". . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 10 of the Kentucky Constitution contains a similar provision that "[n]o warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be. . . ." This has been interpreted to mean that a search warrant "must contain such a description of the place, person or thing to be searched or seized as will reasonably identify them." *Williams v. Commonwealth*, Ky., 261 S.W.2d 416, 417 (1953).

Further comment on this question is found at 68 Am.Jur.2d, *Searches and Seizures*, § 79:

Jack Emory Farley, Public Advocate, Com. of Ky., Frankfort, Rodney McDaniel, Asst. Public Defender, for appellant.

Robert F. Stephens, Atty. Gen., John W. Stewart, Asst. Atty. Gen., Frankfort, for appellee.

Before GANT, LESTER and VANCE, JJ.

GANT, Judge.

Appellant was convicted of possession of a controlled substance. The sole question before this Court is whether evidence seized from appellant and introduced at trial was inadmissible as being the fruit of an illegal search.[1] The facts are as follows.

On October 18, 1976, a search warrant was issued commanding a search of one Daryl Driver, his car, his residence and

1. The first assignment of error regarding the trial court's instruction on trafficking in a controlled substance is without merit because appellant was not found guilty under that instruction and he was therefore not prejudiced thereby.

[I]t has been said generally that a search warrant for a person must describe the person to be searched as specifically and accurately as that required for the search of a place, and that it should identify the person in such a manner as to leave no doubt and no discretion as to the person to be searched.

The controlling constitutional requirement is specificity of description. The only specific description in the warrant or the supporting affidavit in this case referred to Driver. No mention was made of appellant in any way. The affidavit in support of the search warrant herein contained no recitation of facts indicating that any other person other than Driver occupied the premises, was present on the premises when probable cause arose, nor was there any description of persons whose identity was known or unknown to the affiant. The search warrant could not be used in justification of the search of the appellant.

We must then ascertain whether the search of appellant was valid as a warrantless search. A warrantless search is valid under two situations. One is the "stop and frisk" or "pat-down" search, as set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Narcotics investigations are fraught with dangers and the officers had a right and duty to check appellant for weapons to protect themselves and others on the premises. However, the extent of a *Terry* pat-down is quite limited—only a search of outer clothing is justified unless the officer finds what he believes to be a weapon or anything that might be used as a weapon. If no weapons are discovered, a *Terry* search may proceed no further. It is hard to conceive how $\frac{1}{56}$ of an ounce of any substance could resemble a weapon.

The testimony of the officer regarding the search of appellant indicates that it was not conducted for the sole purpose of discovering weapons, nor did the officer believe that what he felt was a weapon. When asked why he searched appellant, the officer replied, "One, it was done for security reasons, and two, after having found

heroin on Mr. Driver, we felt it was probable that Mr. Johantgen would also be in possession."

Concerning the search itself, the officer testified:

D51 Detective Bryant, in conducting a search of Jack Virgil Johantgen, did you notice a particular object, feel it, and if so, where?

A In his left front pants pocket I felt a small—felt the bulge that felt like a small packet.

D52 Did you remove that particular packet at that time?

A Yes, sir, I did.

D53 Once you felt the particular object itself, based upon your experience as a narcotics officer, did you know what you were dealing with or felt like you did?

A In my mind, yes, sir, I felt like I did.

D54 When you felt the particular bulge, did it make any sound or any noise?

A No, sir.

D55 Go ahead and tell us what you did.

A In conducting the search, I felt the packet in the pocket and removed it. I felt like I knew what I had before I even opened it. I opened it and saw what it was and then charged Mr. Johantgen.

The second justification for a warrantless search is when the totality of the circumstances furnish probable cause in a situation where obtaining a search warrant is impossible or where the conditions dictate an immediate search. The mere fact that the appellant arrived at the residence where a search was being conducted in the company of one named in the search warrant and on whom drugs were found does not meet the test of probable cause. Absent some other incriminating circumstances or behavior, any search of his person beyond the "pat-down" search was unjustified. The officers had no prior independent information concerning appellant's involvement in the illegal activity; Driver was not

seen passing any contraband to appellant for the search. The fact that appellant was in the company of the person described in the warrant is not sufficient to legitimize a search of him beyond that necessary to reveal any weapons. *See Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), where the appellant had been observed by narcotics officers talking to various known addicts for some eight hours. The court noted that "[t]he inference that persons who talk to narcotics addicts are engaged in the criminal traffic of narcotics is simply not the sort of reasonable inference required to support an intrusion by police upon an individual's personal security." *Id.* at 62, 88 S.Ct. at 1902.

The state cites *Bays v. Commonwealth*, Ky., 486 S.W.2d 706 (1972), for the contention that probable cause for the search of appellant existed when the officer felt a small bulge in appellant's pocket. In *Bays*, however, the circumstances were described by the court as follows:

> Two men in a rented van parked on the side of the street in the early morning hours carrying mud-splattered televisions and stereo sets with the price tag on them, who have in the immediate past acted in the operation of the van in a manner suspicious to the employees in a railroad station and who are identified as

buddies by a man who associated with them shortly before and who was himself carrying a concealed pistol with the safety off, presents to us circumstances strongly indicative that "criminal activity may be afoot." Citing *Terry, supra. Id.* at 709.

Furthermore, the recitation of facts by the court in *Bays* indicates that before the search Bays and his companion were charged with being under the influence of alcohol. The circumstances surrounding the search of Bays and those surrounding the search of appellant here are obviously vastly different.

We are therefore unable to find any justification for the search of appellant. The evidence seized from him should have been suppressed at trial and, since his conviction could not have been obtained without it, it is therefore reversed.

ALL CONCUR.