**Phillip Eugene HOLBROOK and Antonio Andre Petty (Real Party In Interest), Appellants,**

v.

**Thomas KNOPF, Judge, Jefferson Circuit Court; Commonwealth of Kentucky, Appellees.**

No. 92–SC–537–MR.

Supreme Court of Kentucky.

Dec. 17, 1992.

As Modified on Denial of Rehearing March 18, 1993.

---

Daniel T. Goyette, Jefferson Dist. Public Defender, J. David Niehaus, Deputy Appellate Defender, Louisville, for Holbrook.

Ann T. Eblen, Louisville, for Petty.

Chris Gorman, Atty. Gen., Frankfort, C. Lloyd Vest, II, Sp. Asst. Atty. Gen., Louisville, for Commonwealth.

·Judge Thomas J. Knopf, Jefferson Circuit Court, Louisville, for Knopf.

LEIBSON, Justice.

Holbrook and Petty are codefendants under indictment in Jefferson Circuit Court for sex offenses arising out of a single criminal episode. The Commonwealth filed a motion asking the trial court to order both appellants to submit to the taking of "blood, head hair, body hair, saliva, and pubic hair specimen.... for testing and comparison with evidence gathered during the investigation into the rape, sodomy and sexual abuse charges placed against" them. The motion was supported by the affidavit of the Assistant Commonwealth's Attorney assigned to prosecute the case, representing that "unidentified semen and other trace evidence" had been gathered during the investigation of the case and that "physical specimens from [appellants] are imperative to the further investigation" of the case.

The trial court sustained the Commonwealth's motion, and the appellant, Holbrook, then filed an original action with the Kentucky Court of Appeals seeking an order prohibiting the trial judge from enforcing his order. Petty was joined as a real party in interest, and pursuant to subsequent motion has been designated as an additional appellant. The Court of Appeals denied the writ of prohibition, and this appeal followed, as a matter of right, to our Court. For reasons that follow we affirm the Court of Appeals' order denying the writ of prohibition.

The issue in this case is whether the Commonwealth, in a case of this nature, upon motion and affidavit supporting the potential relevancy of the evidence sought, may obtain an order requiring the defendant to submit to the involuntary taking of physical specimens from his person.

The appellants' argument is built on four interdependent premises, and fails if any one of the four is unreasonable:

1) That, unlike the Federal Constitution, Kentucky Constitution Section Ten (our search and seizure clause) applies only to *searching places* and not to searching *persons*.

2) That Kentucky Constitutional protection against searching persons (rather than places) depends on Section One analysis rather than Section Ten analysis.

3) That the Kentucky Constitution provides a "right of personal security" which is subject to reasonable regulation, but exclusively by act of the General Assembly.

4) That, therefore, absent a statute authorizing the procedure the judiciary lacks power to order a search procedure involving the person of the accused, however reasonable and safeguarded the procedure

may be in terms of search and seizure analysis.

The Court of Appeals order does not explain its reason for denying the writ. Thus we are left to speculate whether the writ was denied on procedural grounds, because the trial court was acting within its jurisdiction and there was an adequate remedy by appeal (*See Green Valley Envtl. Corp. v. Clay*, Ky., 798 S.W.2d 141, 144 (1990)), or on substantive grounds because the Court of Appeals found no merit to the appellants' claim for relief.

■ The essence of the appellants' claim is that there is a state constitutional law "right of personal security" found in Section 1(1) of the Kentucky Constitution, which would be infringed by the taking of blood and body samples as part of a criminal investigation, a right which has "no analogue" in the Federal Constitution, and a right which can only be redressed by preventing the procedure rather than by suppressing the evidence thus obtained.

Section 1 of our Kentucky Constitution states:

"All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:

First: The right of enjoying and defending their lives and liberties."

Addressing first the procedural grounds, if our Court were in agreement that the taking of blood and body samples from the person of the appellants as ordered by the trial court in this case constituted a constitutionally impermissible intrusion into a constitutionally guaranteed right of personal security, we might well agree that suppressing evidence thus obtained would be an inadequate remedy. Since, however, we reject the merits of the appellants' arguments, we need not decide whether an extraordinary writ might be justified if the situation were otherwise.

Insofar as the taking of body samples may be viewed as an issue involving rights of the criminally accused protected by the Federal Constitution, the issue presented here was laid to rest in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). *Schmerber* upheld a state statute permitting a police officer to obtain a blood sample in connection with a drunken driving investigation, without a search warrant and despite the defendant's refusal to consent. The United States Supreme Court held the Fifth Amendment privilege against self-incrimination is testimonial and thus not implicated, and that the taking of blood is reasonably non-intrusive testing, a constitutionally permissible search within the Fourth Amendment test of reasonableness, stating "[s]uch testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of [the Fourth] Amendment." *Id.* at 918.

*Schmerber* was, of course, a warrantless search justified on the basis of "exigent circumstances," whereas the present testing takes on a different look because it is a post-indictment procedure searching for evidence pursuant to court order. But if taking a blood sample is a search without a warrant justified on exigent circumstances that passes the constitutional test of reasonableness, surely the fact of indictment, coupled with the prosecutor's motion and affidavit, and the decision of a judicial officer that the scope of the examination is reasonable and should be so ordered, taken together are the equivalent of a legally obtained search warrant procedure.

The appellants argue that under Kentucky law this is not a search and seizure case, because the search and seizure provision found in Section 10 of our Kentucky Constitution is worded differently from the Fourth Amendment in the United States Constitution, and thus calls for a different conclusion. Section 10 provides:

"The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue *to search any place,* or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." [Emphasis added.]

The appellants' argument is that Section 10 "authorized search warrants [only] for

places"; that it authorizes warrants to seize persons, but it does not allow warrants to search persons in order to look for evidence of crime. But insofar as the taking of body samples is concerned, we see no significant difference between the language of the state and federal constitutions and no substantial reasons calling for a different result. The Federal Constitution provides in pertinent part:

"... and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the *place to be searched*, and the persons or things to be seized." [Emphasis added.]

The legal formula is the same, albeit the words are somewhat differently arranged. We recognize that *Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979), interpreted state constitutional guarantees of the rights of the criminally accused against unreasonable search and seizure as granting broader protection than the Federal counterpart, but our more recent decision overruled *Wagner, Estep v. Commonwealth*, Ky., 663 S.W.2d 213, 216 (1984), and held state protection should be interpreted coextensively with federal guarantees. And in our most recent decision addressing whether our own Section 10 should be interpreted to provide greater protection against search and seizure, *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1992), we stated:

"An examination of Section 10 of the Constitution of Kentucky and the Fourth Amendment to the Constitution of the United States reveals little textual difference. The language used is virtually the same and only the arrangement of the words is different. The absence of material difference between these constitutional provisions was recognized in *Benge v. Commonwealth*, Ky., 321 S.W.2d 247 (1959)."

In *Crayton*, in answering "yes" to the question whether the so-called "good faith" exception to the "exclusionary rule," as enunciated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) should be applied in Kentucky, we

interpreted Kentucky Constitution Section 10 consonant with the Fourth Amendment.

To our knowledge, the judicial procedure utilized here, ordering the search for evidence after indictment by obtaining body samples from the accused by a reasonably non-intrusive means, has been routinely followed for a number of years with no legal challenge made on constitutional grounds to the procedure. Appellants' Brief has cited neither case law from elsewhere nor learned commentary supporting their theory that such procedure violates constitutional protection of personal security. While we have decided several recent cases protecting individual rights on state constitutional law grounds (*See, e.g., Rose v. Council for Better Educ., Inc.* Ky., 790 S.W.2d 186 (1989); *Commonwealth v. Wasson*, Ky., 842 S.W.2d 487 (1992) (rendered September 24, 1992)), our stated purpose is to do so only where the dictates of our Kentucky Constitution, tradition, and other relevant precedents call for such action. We have no intention that such cases should encourage lawsuits espousing novel theories to revise well-established legal practice and principles.

The only authority remotely relevant to which we have been cited is *Tabor v. Scobee*, Ky., 254 S.W.2d 474 (1952), a civil case having nothing whatsoever to do with the rights of the criminally accused, which are covered with specificity in our Kentucky Constitution, Sections 10–13. As with any subject of statutory or constitutional construction, when dealing with the rights of those accused of crimes by the state the specific takes precedence over the general. *Commonwealth v. Schindler*, Ky., 685 S.W.2d 544 (1984). *See also* Sutherland, *Statutory Construction*, Volume 2B, Sec. 51.05, stating that if there is any "conflict" between a provision dealing with a subject in general terms and another dealing with a part of the same subject in a more detailed way, if the two cannot be harmonized, "the latter will prevail." Here the specific provisions in Section Ten protect the accused against "unreasonable search and seizure," and against a search of any nature except where ordered by an appropriate judicial authority after sufficient

grounds providing "probable cause supported by oath or affirmation." It is these provisions rather than the general provisions in Section One that control the present decision.

■ Except for the imagination of counsel, we find no support for the appellants' argument that the Rules of Criminal Procedure (RCr 7.24) are exclusive of all other discovery methods available to the Commonwealth in a criminal case. If so, there could be no basis for issuing a search warrant once the accused has been arrested. A search for evidence may occur at any time that there is probable cause to search, even during trial. *Garr v. Commonwealth*, Ky., 463 S.W.2d 109 (1971), and *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980) both impliedly approved of the procedure of conducting searches, similar to what occurred here, by court order after indictment. In *Newman v. Stinson*, Ky., 489 S.W.2d 826, 829 (1972), we identified "the taking of finger prints, blood samples and breath for criminal analysis [as] in fact searches of the person for evidence." While this was done in the context of differentiating such procedures from compulsive self-incrimination, elsewhere constitutionally prohibited, its meaning is clear in present context: it is a constitutionally permissible search procedure.

The appellants argue that *Newman v. Stinson* establishes the right to such testing *only* where authorized by statute, but what *Newman v. Stinson* means is that evidence thus obtained is permissible *also* when authorized by statute, i.e., in a DUI license revocation case (a statutory procedure) as well as a criminal case.

The appellants' arguments are long on ingenuity and short on substance. Rather than extending this opinion by further discussion, it suffices to say that before attacking established practice and procedure on constitutional grounds, it is important that counsel, however well-meaning, consider carefully whether there is genuine legal underpinning so substantial as to merit the expenditure of judicial resources triggered by pursuing such a case. The

cause of individual rights must not drown in a sea of sterile cases.

The decision of the Court of Appeals denying the Writ of Prohibition is affirmed.

All concur.