COMMONWEALTH of Kentucky,
Appellant,

v.

Arthur CROWDER, Appellee.

No. 93–SC–288–DG.

Supreme Court of Kentucky.

Sept. 29, 1994.

Chris Gorman, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellant.

Frank W. Heft, Jr., Chief Appellate Defender of the Jefferson District Public Defender (Daniel T. Goyette, Jefferson Dist. Public Defender, of counsel), Louisville, for appellee.

JOHN M. ROSENBERG, Special Justice.

The issue in this case is whether the seizure of a "bindle"[1] of drugs incident to a *Terry*[2] patdown search violated the prohibition on "unreasonable searches and seizures" in the Fourth Amendment of the Constitution of the United States and § 10 of the Kentucky Constitution.

The facts are these. On May 4, 1991, twelve days prior to the incident involved in this proceeding, Appellee, Arthur Crowder, was arrested on a charge of trafficking in marijuana by Louisville police officer Brian Nunn, one of the arresting officers in this case. The place of the arrest on this earlier occasion, 22nd and Garland Streets in Louisville, had been described to Nunn as a "hot drug area." According to Nunn, on the earlier occasion Appellee was standing on the corner and made a transaction. When he saw the police, Crowder ran and dropped a plastic bag containing marijuana. Nunn ar-

---

1. Bindle: slang: a small package, envelope, or paper containing a narcotic (as morphine, heroin, or cocaine; also: a small quantity of a narcotic: a narcotic dose).

Merriam–Webster Third New International Dictionary (1986).

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

rested him and the case was resolved in Jefferson District Court.

On May 13 or 14, while Nunn was in the area again, an unknown man told him that if Crowder were on the corner that Crowder would be selling drugs.

On May 16, Officer Nunn was in the area once more, this time patrolling in a vehicle with Officer David Sanford. Nunn again saw Crowder at the corner of 22nd and Garland. When Crowder saw the police officers, he turned his back on them and started to walk off. Nunn stopped the car and told Sanford to detain Crowder and pat him down. Nunn stopped to talk to two women on the corner, but he did not charge them with any offense.

Officer Sanford testified that he did as Nunn ordered. He said in patting Crowder down, he was looking for weapons as a safety precaution. He did not feel any weapons, but felt some keys in Crowder's pocket. Additionally, he felt something in Crowder's left front pocket. Sanford testified "it felt like it may have been a bindle of drugs," and he reached into the pocket to get it out. He said it felt "like a small gumball." In fact, the substance was wrapped in a corner of a cut-off plastic bag, and turned out to be .016 of an ounce of cocaine.

Crowder was indicted for illegal possession of a controlled substance, cocaine, in violation of KRS 218A.140 and 218A.990(7). Crowder moved to suppress on the ground that the search for drugs exceeded the permissible scope of a *Terry* search. The circuit court overruled the motion holding that in its view, under prior Kentucky decisions, contraband discovered "incidentally and inadvertently" during a lawful "pat-down" search could be seized without a warrant.[3]

The Court of Appeals, in a 2–to–1 decision, reversed holding that: "[S]ince the officer did not feel anything resembling a weapon, we believe that the officer exceeded the scope of permissible search under a *Terry* patdown when he reached into appellant's pocket to retrieve an object which he believed to be drugs and not a weapon." The Court of Appeals relied on its earlier decisions in *Johantgen v. Commonwealth*, Ky. App., 571 S.W.2d 110 (1978); and *Waugh v. Commonwealth*, Ky.App., 605 S.W.2d 43 (1980). The Court of Appeals distinguished its earlier decision in *Dunn v. Commonwealth*, Ky.App., 689 S.W.2d 23 (1984), on which the Commonwealth relied. The Court of Appeals noted that *Dunn* involved the plain view exception to the warrant requirement, which did not apply to Crowder's case since the evidence in question, being in Crowder's pocket, was clearly not in plain view. In dissent, Judge Emberton contended that a "plain touch" exception to the warrant requirement was as appropriate as a plain view exception.

Following the decision of the Court of Appeals in this case, the United States Supreme Court decided the case of *Minnesota v. Dickerson*, 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). That case is virtually indistinguishable from the present case [4], and we affirm the Court of Appeals based on the holding in *Dickerson*.

In *Dickerson*, two Minneapolis police officers on patrol observed respondent leaving a building they considered to be a "crack house." They had previously executed search warrants on the premises and responded to complaints of drug sales in the building's hallways. When the suspect made eye contact with one of the police officers, he halted and walked in the opposite direction into an alleyway. Based on the suspect having left the building known as a "crack house" and his decision to walk away from

---

3. Crowder entered a conditional plea of guilty to trafficking in cocaine, and was sentenced to one year imprisonment.

4. In *Dickerson*, however, the Minnesota courts found that the requirements for a valid *Terry* patdown had been met. In the present case, defense counsel conceded the validity of the stop-and-frisk under *Terry* at the suppression hearing, so that the propriety of the patdown is not in issue on appeal. *Todd v. Commonwealth*, Ky.,

716 S.W.2d 242 (1986). If it were, there might well be a serious question about its validity since the record is devoid of any evidence that Crowder was armed, or was dangerous, or that he posed a threat to the safety of the officers, based on his conduct on May 16, or during the earlier arrest on May 4. *See Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Waugh, supra; Johantgen, supra*.

them, the police officers followed respondent into the alley and ordered him to submit to a *Terry* search. The search revealed no weapons, but the officer conducting the patdown search noticed a small lump in the front pocket of the suspect's nylon jacket. He then reached into the suspect's pocket and retrieved a small plastic bag containing one-fifth of one gram of crack cocaine.

The United States Supreme Court held, as did the Supreme Court of Minnesota, that the further exploration of the suspect's pockets after determining that it contained no weapon "over-stepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*" and the Fourth Amendment's protection against unreasonable searches and seizures.[5] The Supreme Court reiterated the narrow limits on the permissibility of a *Terry* patdown search as an exception to the warrant requirement:

> "[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." 392 U.S., at 24, 88 S.Ct., at 1881. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams* [*v. Williams* ] *supra* [407 U.S. 143], at 146, 92 S.Ct. [1921], at 1923 [32 L.Ed.2d 612 (1972) ]. Rather, a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry, supra*, at 26, 88 S.Ct., at 1882; see also *Michigan v. Long*, 463 U.S. 1032, 1049, and 1052, n. 16, 103 S.Ct. 3469, 3480–3481, and 3482, n. 16, 77 L.Ed.2d 1201 (1983); *Ybarra v. Illinois*, 444 U.S. 85, 93–94, 100 S.Ct. 338, 343–344, 62 L.Ed.2d 238 (1979). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York*, 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

*Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2136.

The Supreme Court then went on to examine whether a "plain feel" rule might be applicable if the police discovers contraband "through the sense of touch during an otherwise lawful search." The Court concluded that a narrowly drawn exception to the warrant requirement is appropriate when: (1) the requirements of *Terry* are otherwise complied with; and (2) the non-threatening contraband is *immediately apparent* from the sense of touch. The Supreme Court based its decision by analogy to the plain view cases, noting that in either case, the Fourth Amendment's requirement that an "officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Dickerson*, 508 U.S. at ——, 113 S.Ct. at 1237. The Supreme Court noted that the premise of *Terry* is that an officer will be able to detect the presence of a weapon through the sense of touch when the police "pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." *Dickerson*, at ——, 113 S.Ct. at 1237 (footnote omitted). Thus, if the non-threatening contraband is immediately apparent from the sense of touch, during an otherwise lawful patdown, an officer should not be required to ignore it. *See* e.g., *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

In applying these principles to the facts in *Dickerson*, the Supreme Court held, howev-

---

5. The Commonwealth claims that the instant case is different from *Dickerson* because Officer Sanford "recognized" what he felt in Crowder's pocket as drugs (Appellant's brief, p. 3). The record belies this assertion, since Officer Sanford, at best, thought the object *might* have been drugs.

er, that the seizure of the cocaine was unconstitutional because the officer had exceeded the bounds of *Terry* in conducting the pat-down search. The Court reiterated that the sole justification for a *Terry* search is the safety and protection of the officer and others nearby. Once having concluded that the suspect's pocket contained no weapon, the officer had no basis for a continued exploration of the pocket. Although the officer was entitled to put his hand on the suspect's pocket to feel for weapons, the officer's own testimony demonstrated that he did not immediately recognize the substance in question as cocaine, and that he recognized it only after further exploration of the suspect's pocket. This further exploration was not authorized by *Terry* or any other exception to the warrant requirement, and the seizure of the cocaine was therefore unconstitutional.

■ By applying the Supreme Court's analysis to this case, the same result follows. Even acknowledging the propriety of the *Terry* search in light of defense counsel's concession,[6] it is clear from the record that officer Sanford did not immediately recognize what he felt in Crowder's pocket as drugs. Sanford testified it "felt like it *may* have been a bindle of drugs" (emphasis added); and that "it felt like a small gumball." He then reached into the pocket to get it out. Since the nature of the non-threatening contraband was not immediately apparent to Officer Sanford when conducting the pat-down, his further exploration of Crowder's pocket "was not authorized by *Terry* or any other exception to the warrant requirement." *Dickerson*, 508 U.S. at ——, 113 S.Ct., at 2139. Therefore the search was constitutionally invalid, as was the resulting seizure of the cocaine.

Finally, Crowder urges that this Court should reject the limited plain touch exception adopted in *Dickerson* as being violative of § 10 of the Kentucky Constitution. To be sure, this Court has held that the Kentucky Constitution may, in certain circumstances, provide greater protection from the infringement of individual liberties than the federal constitution. *Commonwealth v. Wasson*, Ky., 842 S.W.2d 487 (1993).

In the case before us, however, the decisions of this Court in *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1992) and *Holbrook v. Knopf*, Ky., 847 S.W.2d 52 (1993), are apposite. In *Crayton*, this Court followed the United States Supreme Court's application of the good faith exception to the warrant requirement in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), in holding that there was no violation under § 10 of the Kentucky Constitution. *Holbrook* followed *Crayton* in interpreting § 10 consonant with the Fourth Amendment. In so doing, this Court quoted from *Crayton*, as follows:

> "An examination of Section 10 of the Constitution of Kentucky and the Fourth Amendment to the Constitution of the United States reveals little textual difference. The language used is virtually the same and only the arrangement of the words is different. The absence of material difference between these constitutional provisions was recognized in *Benge v. Commonwealth*, Ky., 321 S.W.2d 247 (1959)."

*Holbrook*, 847 S.W.2d at 55.

■ Accordingly, under the analyses in *Crayton* and *Holbrook*, the limited application of a plain feel exception to the warrant requirement in connection with a valid *Terry* search, as approved by the United States Supreme Court in *Dickerson* and as set out herein, does not violate § 10 of the Kentucky Constitution.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and LEIBSON, J., concur.

LAMBERT, J., files a separate concurring opinion in which REYNOLDS, J., joins.

WINTERSHEIMER, J., dissents in a separate opinion in which SPAIN, J., joins.

STUMBO, J., not sitting.

6. *See* n. 3, *supra*.

LAMBERT, Justice, concurring.

Despite the views expressed hereinafter, but being unable to meaningfully distinguish between the case at bar and the decision of the United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), which construed the Fourth Amendment to the Constitution of the United States, I am compelled by Article VI of the Constitution of the United States to concur in the result reached by the majority. Nevertheless, I write separately to express my disagreement with the *Dickerson* case.

Simply stated, the issue is whether a police officer, rightfully engaged in a *Terry*[1] patdown search, may seize an item encountered which is known or reasonably believed to be contraband.

There is no conceptual difference between the plain-view and the so-called "plain-feel" doctrine. In each instance, the information gained is by sensory perception and only the degree of certainty, if any, would differ. It has long been the law that an officer engaged in a lawful search may seize any item of contraband within his plain view. *Michigan v. Long* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). This recognizes that one sworn to enforce the law should not be required to turn a blind eye to the commission of a crime in his presence simply because the initial search was for something other than the contraband discovered. It also recognizes that the constitutional prohibitions against unreasonable search and seizure do not protect from seizure those items unintentionally encountered in the course of a lawful search. Said otherwise, there is nothing unreasonable about the seizure of items of contraband when the search which brought about the discovery was lawful.

The decision of the Supreme Court in *Minnesota v. Dickerson* amounts to hairsplitting in the extreme. The opinion acknowledges the right of police officers to conduct a *Terry* patdown search in a proper case, but prohibits seizure of contraband discovered in the course of the search unless the contraband is immediately apparent as such.[2] Thus, to justify seizure under the *Dickerson* requirements, the police officer must, on discovery of an item or object on the person of a suspect, simultaneously conclude that the object is not a weapon and that it is contraband other than a weapon. Such decisions must be made instantaneously and as a part of the same thought process. No further inquiry as to the nature of the object is permitted.

It is unrealistic to require such superhuman conduct. A far more rational rule would be to permit seizure of any item of contraband discovered in the course of a *Terry* search. Of course, no search would be permitted after it was determined that the suspect was unarmed, but any item suspected of being contraband and discovered in the course of the search for weapons should be subject to seizure and the convoluted process required by *Dickerson* entirely avoided.

REYNOLDS, J., joins this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the facts in this case do not permit a decision of this court to be based on the case of *Minnesota v. Dickerson*, 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

In *Dickerson*, the police officer never believed the lump in Dickerson's jacket was a weapon and did not immediately recognize it as cocaine. The officer determined that it was cocaine only after he squeezed and otherwise manipulated the contents of the pocket. The U.S. Supreme Court held that the search in *Dickerson, supra*, went far beyond a mere extension of the pat-down search as authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

---

**1.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**2.** The conduct held to be improper was when "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." *Minnesota v. Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2138, 124 L.Ed.2d at 347.

In this case, the police officer immediately recognized the bindle of drugs during the pat-down search for weapons. This fact is a clearly distinguishing aspect of the case and consequently *Dickerson* cannot be used as a foundation for a reversal of this case.

The Federal courts have long recognized that probable cause for a warrantless search can be based on senses other than sight. *See Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Johnson v. U.S.,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

Section 10 of the Kentucky Constitution and the Fourth Amendment to the United States Constitution are very similar in both language and purpose. In *Crayton v. Commonwealth,* Ky., 846 S.W.2d 684 (1992), this Court refused to apply a more rigorous standard than the United States Supreme Court, finding little textual difference between Section 10 of the Kentucky Constitution and the First Amendment of the United States Constitution. A similar philosophy should be applied in this instance. The Kentucky Constitution does not require the suppression of the evidence in this case.

A trained and experienced police officer can observe through his sense of touch what others can observe only through sight. The "plain touch" doctrine should be recognized in Kentucky.

Eight other states have held that an object is subject to search and seizure, if as a result of lawful touching, a police officer develops probable cause to determine that the object is contraband. *See Jackson v. State,* 34 Ark. App. 4, 804 S.W.2d 735 (1991); *People v. Chavers,* 33 Cal.3d 462, 189 Cal.Rptr. 169, 658 P.2d 96 (1983); *People v. Hughes,* 767 P.2d 1201 (Colo.1989); *State v. Vanacker,* 759 S.W.2d 391 (Mo.App.1988); *State v. Vasquez,* 112 N.M. 363, 815 P.2d 659 (App.1991); *Ruffin v. Commonwealth,* 13 Va.App. 206, 409 S.E.2d 177 (1991); *State v. Richardson,* 156 Wis.2d 128, 456 N.W.2d 830 (1990); *State v. Bearden,* 449 So.2d 1109 (La.Ct.App.1984).

I must join with Justice Lambert in his suggestion that a rational rule would be to permit seizure of any item of contraband discovered in the course of a valid *Terry* search.

Under the facts of this case, I believe the decision of the Court of Appeals should be reversed and the judgment of conviction reinstated.

SPAIN, J., joins in this dissent.