Cecil Laudell **PITMAN**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 93–CA–0488–MR.

Court of Appeals of Kentucky.

Feb. 3, 1995.

Discretionary Review Denied by
Supreme Court May 3, 1995.

Charles C. Pharis, Monticello, for appellant.

Chris Gorman, Atty. Gen., Michael Harned, Asst. Atty. Gen., Frankfort, for appellee.

Before COMBS, JOHNSTONE and MILLER, JJ.

COMBS, Judge:

This case is an appeal of an order overruling Appellant's motion to suppress. The Appellant entered a conditional guilty plea to possession of marijuana over 5 pounds with intent to sell, reserving Appellant's right to appeal from any adverse decision that the trial court might render on his motion to suppress. The court denied Appellant's motion to suppress and subsequently entered judgment. Appellant was sentenced to 5 years imprisonment. His sentence was suspended and he was placed on probation for 3 years. On appeal, the Appellant argues that the court erred in overruling his motion to suppress since the evidence was obtained during an illegal search and seizure. We agree and reverse.

The Appellant, Cecil Laudell Pitman (Pitman), was spotted standing beside the highway on September 25, 1991 by Metcalfe County Sheriff Rex Bunch (Bunch) and Deputy Sheriff John Glass (Glass) while they were driving along Highway 90 in Metcalfe County. Behind Pitman, just over the guardrail, were two green garbage bags. As Bunch and Glass drove past, Bunch testified that Pitman turned his back. Finding Pitman's behavior suspicious, Bunch and Glass turned the car around and drove back to where Pitman was standing.

When Bunch and Glass approached Pitman, Bunch asked him what he was doing. Pitman stated that he was waiting for a ride. Bunch then asked Pitman what was in the bags; Pitman responded that his clothes were in the bags. Glass then picked up and felt the bags. He testified that he could tell by the weight of the bags that they did not contain clothing, contradicting Pitman's response. Glass further testified that the bags felt as though they contained "sticks or something." Glass then opened the bags, containing additional burlap bags filled with over 15 pounds of marijuana.

Appellant argues that the circuit court's denial of his motion to suppress was clearly erroneous because the warrantless search and subsequent seizure were conducted in violation of the protection against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution. The Commonwealth, however, relying on exceptions to the Fourth Amendment set forth by *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 900–01 (1968), argues that its officers conducted a lawful search of Appellant Pitman pursuant to a legitimate "stop and frisk." While *Terry* does provide an exception to the Fourth Amendment warrant requirement, it does so narrowly, taking scrupulous care to weigh "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878–79.

Appellant Pitman does not contest the legality of the initial "stop" by Glass and Bunch. At issue is the nature of the search that ensued. *Terry* requires that the scope of the search be limited to a pat-down of a suspect's person for the purpose of determining whether he possesses weapons which may be used to harm the officers or others in the vicinity. The Commonwealth's reliance on *Terry* is misplaced since neither Glass nor Bunch attempted a pat down or a search of Pitman for weapons at all, electing instead to search his bags on the theory that they *might* contain weapons.

The principles of *Terry* were recently reexamined in the case of *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), holding that an officer could seize nonthreatening contraband detected through the sense of touch during a legitimate *Terry* search, provided the search was "strictly circumscribed" to its intended purpose—a protective pat down for weapons. *See also Commonwealth v. Crowder*, Ky., 884 S.W.2d 649 (1994). In examining whether a "plain feel" or "plain touch" rule might be applicable, the Court concluded that a narrowly-drawn exception to the warrant re-

quirement is appropriate when: (1) the requirements of *Terry* are otherwise met; and (2) *the non-threatening contraband is immediately apparent from the sense of touch.* *Crowder*, 884 S.W.2d at 649 (citing *Minnesota*, —— U.S. at ——, 113 S.Ct. at 1237) (emphasis added).

After failing to search Pitman at all, Glass testified that the bags felt as though they contained "sticks or something." He was apparently referring to general weight or bulk rather than specific shapes or contours, at most speculating about the contents rather than drawing a conclusion based on clear tactile contact. We find this testimony wholly insufficient under both criteria enunciated in *Crowder;* i.e., (1) the requirements of *Terry* were not met at the threshold level; and (2) the existence of the contraband was far from readily or immediately apparent from the sense of touch. What is immediately apparent is that the bags aroused the curiosity of these officers and induced them to engage in the very kind of "fishing expedition" that the Fourth Amendment prohibits.

The Commonwealth also cites *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), for the proposition that the *Terry* "stop and frisk" is not limited to the person but may extend to an area within the suspect's control. However, the *Long* holding is quite fact-specific, involving a suspect in a car—a clearly defined area under his direct control. When the officer in *Long* approached the vehicle, he noticed a knife in plain view and another parcel which he believed could also be a weapon. Additionally, the officer had already patted down the suspect before searching the vehicle. The case before us is distinct from *Long* in all respects. Pitman was standing by a road with no specifically identifiable area under his control and had never been frisked for weapons—nor were any in plain view. We do not believe that *Long* expands the scope of the *Terry* exception to include a broad, undefined area in which a suspect is located over which he has no particular dominion or control.

More misplaced reliance by the Commonwealth rests on its citation to *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the Court held

that an officer may search *an arrestee and the area* within his immediate control. Pitman was not an arrestee at the time the police searched his bags. Unlike Belton, where the search followed the arrest, it was the fruit of an unlawful search that led to the arrest of Pitman.

There is no valid basis for the Commonwealth to invoke the "plain view" justification for the search as no contraband was in plain view. It cites *United States v. Riggs*, 474 F.2d 699 (2nd Cir.1973), *cert. denied*, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973), involving plain view of white powder in a woman's purse made visible during a request for her identification prior to boarding a plane. That case simply has no relevance to the matter at bar.

Interestingly enough, the Commonwealth invokes *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which contains strong language undermining its very own position in this case. Ybarra was present in a tavern for which a valid search warrant had been executed. The officers searched Ybarra, stating as their justification either the fact that they had a warrant to search the premises, or in the alternative that *Terry* authorized a pat-down search for possible weapons. The Court held that the police had failed in both respects, stating,

> [n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

*Id.* 444 U.S. at 93–94, 100 S.Ct. at 343. *Ybarra* draws attention to the narrowness of the exception created by *Terry* and, far from justifying the position of the Commonwealth, only serves to highlight the impropriety of the search conducted in this case.

In summary, the Commonwealth has failed to justify any reliance on *Terry* and its prolific progeny to justify the search that occurred

in this case. A *Terry* search must be strictly limited to that which is necessary for the discovery of weapons. *Minnesota,* —— U.S. at ——, 113 S.Ct. at 2130. A *Terry* search did not occur here. While carving out a useful and necessary exception to the Fourth Amendment warrant requirement to safeguard the lives of our police officers, *Terry* still carefully reiterated the sacrosanct status of the Fourth Amendment's protection of or citizenry from arbitrary pilfering of their belongings or premises, noting that court "cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." *Terry,* 392 U.S. at 13, 88 S.Ct. at 1875.

Nor will this Court. Therefore, we reverse.

All concur.