RENDERED:  JANUARY 10, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1212-MR

GREGORY FULLER                                                                 APPELLANT

v.

APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 23-CR-00465

COMMONWEALTH OF KENTUCKY                                         APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT,
JUDGES.

LAMBERT, JUDGE:  Gregory Fuller appeals his September 25, 2023, conviction
for possession of a controlled substance in the first degree.  He challenges the
denial of his motion to suppress evidence and argues that the court erred by failing
to grant him probation.  After careful review of the briefs, record, and law, we
vacate and remand for further consideration of Fuller's motion to suppress.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

In April 2023, the Kenton County grand jury indicted Fuller on a charge of first-degree possession of a controlled substance, a class D felony. Fuller subsequently sought to suppress the Commonwealth's evidence, arguing that Officers Williams and Igo of the Covington Police Narcotics Unit had unlawfully detained and searched him without probable cause, reasonable suspicion, or any other exception to the warrant requirement.

The court conducted a suppression hearing on July 17, 2023, where it heard testimony from the officers and their body camera footage was entered into evidence. The evidence established that on March 28, 2023, the officers were conducting a proactive patrol on Howell Street in an unmarked vehicle. At approximately 3:30 PM, they observed Fuller enter into a residence at 2113 Howell Street and exit approximately a minute later. Fuller then crossed the street diagonally outside of a crosswalk, committing a jaywalking[1] violation, and headed towards a nearby corner store.

The officers both asserted that the residence Fuller entered was a known drug house, citing in support its inclusion on a community-based list posted to all patrolmen due to multiple narcotic complaints. Officer Igo further testified that the house had been a problem and under investigation for narcotics activity

---

[1] Kentucky Revised Statutes (KRS) 189.570(6).

since 2017, and that he had frequently stopped by the residence when on patrol and that there were always drug users and traffickers present. He explained that the residence had been added to the community-based list due to complaints from residents of the area that drug users were going from the residence to a nearby alley and shooting up and because there was a suspected methamphetamine dealer at the residence, who Officer Igo named. Based on this knowledge as well as their observations of Fuller's brief visit to the residence and his jaywalking violation, the officers decided to question Fuller.

The body camera footage showed Officer Williams exit the vehicle, call to Fuller, identify himself as police, and instruct Fuller to have a seat. Fuller denied any wrongdoing and refused to sit. Officer Williams rapidly repeated his instructions multiple times while reaching for Fuller's arm. Officer Williams grabbed Fuller's arm and physically sat him on the curb over protestations that his rights were being violated. Officer Williams then performed a brief frisk of Fuller's outer clothing, which produced nothing. When Fuller attempted to stand up, Officer Igo told Officer Williams to detain him. Fuller resisted being handcuffed, yelling protestations of his innocence, screaming for help, and attempting to pull his hands free, but was ultimately cuffed. In justification of his response, Fuller claimed that he had thought the officers were going to kill him. Officer Igo then announced that Fuller had dope in his hand. Fuller denied this and

-3-

did not comply with the officers' commands to open his hand. The officers proceeded to pry Fuller's fingers open and extracted a small baggie, identified by Officer Igo as containing suspected methamphetamine. Approximately two minutes elapsed between the time Officer Williams contacted Fuller to the time the officers forced Fuller's hand open. The officers arrested Fuller, who made statements to police after being read his *Miranda*[2] rights.

During his testimony, Officer Williams explained that he restrained Fuller because his "thousand-yard glance" made him suspect that he would run, and he frisked Fuller because of his unexplained reluctance to sit down. Officer Williams also stated that he was not aware Fuller was holding anything in his hand prior to Officer Igo's statement that Fuller had drugs. Up to that point, Fuller was only being detained, not arrested. Officer Igo testified that when Officer Williams made contact, Fuller promptly balled something in his hand, tensed up, and tried to enter the store. Officer Igo admitted that he could not see that the clenched item was narcotics, but he knew it was not a gun. He inferred it was drugs because Fuller had just left a known drug house.

The court orally denied the suppression motion on July 31, 2023, and stated as follows:

> My determination was that he was walking out of a
> known crack house, they were aware of it. As he was

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

crossing the street, he was in violation of an ordinance, local rule. Nothing too spectacular, but certainly enough for the police to be able to approach him without coming out [of] nowhere, just starting a casual conversation as if under *Terry*.[3] So, when they got there, it's my understanding from hearing the testimony that police officers saw his hand clenched and saw something in that. Based on that they had probable cause to order him to the ground. So, court overrules the suppression motion.

The case proceeded to trial. Immediately prior to trial, the Commonwealth Attorney advised the court that the suppression hearing testimony did not support the finding that Officer Williams saw drugs in Fuller's hand before directing him to sit on the curb. Although the court purported to agree with the Commonwealth Attorney that the finding was not determinative, it reiterated that its memory of the testimony was that the clenched hand "was what took it to the next level." The court continued to observe that the officer's request for Fuller to sit down was based on seeing the hand and being concerned, "so probable cause to have him to stop, probable cause to talk to him, probable cause to then look at the clenched hand because of the safety issues that then went to *Terry*, as opposed to just a regular stop."

Ultimately, Fuller was convicted as charged, and the jury recommended a sentence of two years and six months. At sentencing, Fuller

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

sought presumptive probation under KRS 218A.1415, but the court elected to sentence him in accords with the jury's recommendation. This appeal challenging the denial of his motion to suppress and his entitlement to presumptive probation followed.

## ANALYSIS

On appeal, Fuller first renews his claim that the officers violated his rights to be free from unreasonable search and seizure guaranteed by the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution.[4] Specifically, Fuller argues that the court made erroneous findings of fact, that he was illegally detained without probable cause, and that the officers preformed an improper *Terry* frisk.

We employ the following two-step process when reviewing a suppression motion ruling:

> First, findings of fact are reviewed and will not be set aside unless they are clearly erroneous. CR[5] 52.01; *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Commonwealth v. Deloney*, 20 S.W.3d 471, 473 (Ky. 2000). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning*

---

[4] Our interpretation of Section 10 of the Kentucky Constitution is guided by federal Fourth Amendment law. *Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022).

[5] Kentucky Rules of Civil Procedure.

-6-

> *Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.
> 1998) (citation omitted). Also, due regard is given to the
> opportunity of the circuit court to judge the credibility of
> the testifying officer and to assess the reasonableness of
> the officer's inferences. *Commonwealth v. Whitmore*, 92
> S.W.3d 76, 79 (Ky. 2002). Second, the circuit court's
> application of the law to conclusive facts is reviewed de
> novo. *Simpson*, 474 S.W.3d at 547.

*Commonwealth v. Perry*, 630 S.W.3d 671, 674 (Ky. 2021).

Regarding the court's findings of fact, Fuller argues that the court erred when it found: (1) that he was seen leaving a known crack house and (2) that the officers observed something clenched in his hand before they ordered him to the ground. We agree that neither finding is supported by the evidence. The testimony was that the residence was known for narcotics activity, methamphetamine specifically, and no evidence supports that Officer Williams either saw or was told about the item in Fuller's hand until after Fuller was restrained. Indeed, the Commonwealth admitted in the proceedings below that the latter finding was inaccurate and has not asserted a contrary position on appeal.

Although the error in the first finding is nominal, the error in the second finding is significant, especially in light of the court's limited and imprecise oral findings. When faced with incomplete and clearly erroneous findings, the Kentucky Supreme Court instructs that, absent a dispute, we may "assume the testimony from the suppression hearing is accurate and use the facts elicited during

that testimony as the basis for our [Fourth Amendment] analysis." *Commonwealth v. Clayborne*, 635 S.W.3d 818, 824 (Ky. 2021).

Relying on the evidence, we will address Fuller's claim that he was illegally detained. Citing the Supreme Court's explanation in *California v. Hadari D.*, 499 U.S. 621, 624-25, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), that the common law considered the application of physical force to the body of a person with the intent to restrain to be an arrest, Fuller reasons that he was arrested without probable cause when Officer Williams grabbed his arm and forcibly sat him on the curb based solely on a jaywalking violation and his brief visit to a suspected drug house. Without conceding a lack of probable cause, the Commonwealth argues Fuller was merely detained. We agree with the Commonwealth.

Though the common law definition cited by Fuller continues to be applicable when determining whether a seizure has occurred, the Supreme Court in *Terry*, 392 U.S. at 30-31, 88 S. Ct. at 1885, carved out an exception to the probable cause requirement. This exception permits police to conduct brief investigatory detentions, or *Terry* stops, when the officer has a reasonable suspicion, based on objective and articulable facts, that criminal activity has occurred, is occurring, or is about to occur. *Id.*; *see also Commonwealth v. Morgan*, 248 S.W.3d 538, 540 (Ky. 2008).

-8-

A *Terry* stop may ripen into an arrest requiring probable cause if the detention is unreasonably in its use of force. *Williams v. Commonwealth*, 147 S.W.3d 1, 6 (Ky. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 590 (6th Cir. 1994), *cert. denied*, 512 U.S. 1236, 114 S. Ct. 2740, 129 L. Ed. 2d 860 (1994)). However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989)). Here, the conduct that Fuller complains of, his arm being grabbed and being made to sit down, is not inherently unreasonable and is similar to the seizure approved of in *Terry*. 392 U.S. at 7, 16-19, 88 S. Ct. at 1872, 1877-79. Accordingly, we disagree with Fuller's characterization of his initial seizure as an arrest requiring probable cause, but, as we will explain below, we do not reach the issue of whether reasonable suspicion supported the stop.

We now turn to Fuller's claims that he was subjected to an improper frisk.[6] Unquestionably, during a valid *Terry* stop, an officer is permitted to

---

[6] The Commonwealth challenged whether this claim was preserved since Fuller only questioned the validity of the *Terry* stop and the inapplicability of the search incident to arrest exception in the proceedings below. The Commonwealth is correct that Fuller did not specifically address *Terry* frisks before the trial court; however, contrary to the Commonwealth's assertion otherwise, the court made a finding that a *Terry* search occurred. Before the trial on August 2, 2023, the court reiterated its conclusion that "officers had probable cause to then look at the clenched hand

conduct a pat-down search or frisk for weapons if he has a reasonable belief that the detained individual is armed and presently dangerous. *Frazier v. Commonwealth*, 406 S.W.3d 448, 453 (Ky. 2013) (citing *Terry*, 392 U.S. at 24, 88 S. Ct. 1868 and *Commonwealth v. Crowder*, 884 S.W.2d 649, 651 (Ky. 1994)). A *Terry* search must be protective in nature, not investigative. *Id.* (citing *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)). If the search "goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and any evidence obtained will be suppressed" absent some independent basis justifying the search. *Id.* (citing *Adkins v. Commonwealth*, 96 S.W.3d 779, 786-87 (Ky. 2003)).

Here, even if this court were to assume the validity of the stop and the officer's pat-down of Fuller's outer clothing, it is incontrovertible that officer safety was not the impetus when, in immediate response to Officer Igo's conjecture that Fuller was holding drugs, the officers pried his hand open. Because the officers' search was solely directed towards the discovery of evidence, the court's conclusion it was a valid *Terry* search is incorrect.

We cannot discern from the court's oral ruling whether it additionally determined that probable cause, presumably as a search incident to arrest, existed

---

because of the safety issues that then went to *Terry*[.]" Undoubtedly, Fuller is entitled to challenge the court's conclusion, and there is no preservation issue.

to justify this search.[7]  While we are permitted to affirm for any reason apparent on the record, *see Commonwealth v. Mitchell*, 610 S.W.3d 263, 271 (Ky. 2020), it is more prudent to remand the matter for additional proceedings.  The parties did not fully brief the probable cause issue[8] and resolution will involve determinations of credibility, which are within the discretion of the trial court.  *Kay v. Commonwealth*, 673 S.W.3d 448, 452 (Ky. App. 2023) (quoting *Sowell v. Commonwealth*, 168 S.W.3d 429, 431 (Ky. App. 2005)).

Though likely to arise again on remand, for various reasons, we choose not to address whether the officers had reasonable suspicion to conduct a *Terry* stop.  First, the court's determination of probable cause could render the question moot.  Second, on remand the court can render written findings that will aid our review.  And third, the Commonwealth and the court both rely, at least in part, on Fuller's jaywalking violation as sufficient grounds for a *Terry* stop, and the validity of that reliance is presently before the Supreme Court of Kentucky on discretionary review in *Buechele v. Commonwealth*, No. 2024-SC-0007-DG.

---

[7]  The court uses the phrase probable cause routinely but does so with a misapprehension of the facts and seemingly in the context of its *Terry* analysis, which only requires reasonable suspicion.  *Terry*, 392 U.S. at 30-31, 88 S. Ct. at 1885.

[8]  Complicating our review is the lack of a written order and the fact that the Commonwealth, despite bearing the burden of persuasion, never identified what exception to the warrant requirement applied to the search.  *See Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky. 1979) ("All searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant.  The burden is on the prosecution to show the search comes within an exception.").

Finally, based upon our holding, we need not reach Fuller's argument that the "court erred in not following the 'presumptive probation' procedure outlined in KRS 218A.010(44) and KRS 218A.1415."

## CONCLUSION

For the foregoing reasons, the order of the Kenton Circuit Court denying Fuller's motion to suppress is vacated, and the matter is remanded with directions that the court enter a written order consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky