412 So.2d 988 (1982)
STATE of Louisiana
v.
Alfred SCOTT.
No. 81-KA-2036.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied March 19, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Clifford R. Strider, IV, and Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Paul A. Tabary, III, of Sapir & Belknap, New Orleans, for defendant-appellant.
DENNIS, Justice.[*]
In this street encounter case, defendant Alfred Scott, a black New Orleans sanitation department employee, contends that his conviction of possessing a firearm as a felon, La.R.S. 14:95.1, and his sentence of three years at hard labor were based on an unconstitutional search and seizure. After his unsuccessful motion to suppress the weapon, which was discovered on his person by a policeman during a street encounter, defendant reserved his right to appeal from the trial court's ruling and pleaded guilty.
On March 8, 1981 at about 5:00 p. m., Officer Marinovic parked his marked patrol car near Iberville and Royal Streets in the French Quarter. He observed Scott walking back and forth on the sidewalk for "maybe ten, maybe fifteen minutes." Marinovic, who was in uniform, moved his patrol car down the street nearer the defendant, *989 got out, and approached Scott. Before the officer said anything, Scott told him he worked for the city sanitation department, pointing to an orange t-shirt around his neck, and said he was waiting for someone. According to the officer, Scott moved around quite a bit and spoke rapidly. When the officer asked him for his identification, Scott first reached toward his right pocket but then pulled his identification from his left pocket. After inspecting Scott's driver's license, the officer frisked him, discovered a .25 revolver in his right back pocket, and arrested him.
During his testimony at the motion to suppress hearing, officer Marinovic testified that he suspected Scott had committed a crime or was planning one because he walked in "a suspicious manner," "seemed to be very nervous," "talk[ed] very fast," "moved around quite a bit," and volunteered an explanation of his presence before he was asked for it. Also, the police officer testified that numerous street crimes had been committed in the section including Iberville, Royal and Bourbon Streets. He acknowledged, however, that no crime had been reported that day and that pedestrian traffic was heavy at the scene of the stop and frisk. He conceded, also, that before he frisked Scott he was aware that his orange t-shirt was the same color as the kind worn by city sanitation workers.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the United States Supreme Court held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. The question raised by Marinovic's stop and frisk of the defendant is whether his suspicion that defendant had committed or was about to commit a crime was reasonable.
Under the circumstances of this case, the officer did not have reasonable grounds to conclude that criminal activity may have been afoot. The officer gave no reasons in fact for his conclusions that defendant walked "in a suspicious manner" or that defendant may have committed a crime or was contemplating criminal activity. The facts that the defendant walked up and down the sidewalk for 10-15 minutes, seemed nervous, talked fast, moved around quite a bit, and volunteered an explanation for his presence were not reasons to think he may have been a criminal. It is certainly not a crime to walk up and down a sidewalk. Moreover, it is not unusual for a sanitation department employee to be seen waiting for someone on a city sidewalk. Officer Marinovic himself testified that on some occasions even innocent bystanders become nervous when approached by a police officer. Nervousness on the part of a black laborer when confronted by an armed uniformed police officer does not seem so unusual as to indicate guilt or criminal proclivity. See Shwartz, Stop and Frisk (A Case Study in Judicial Control of the Police), 58 J.Crim.L.C. & P.S. 433, 448 (1967); Lewis, Stop and Frisk as Arrest and SearchThe Use and Misuse of Euphemisms, 57 J.Crim.L.C. & P.S. 251, 251-53 (1966); W. LaFave, Search & Seizure, § 9.1 at n. 53.
There is a marked contrast between the facts of this case and others in which the courts have approved a limited search of a person's outer clothing for weapons. In Terry, for example, the police officer observed three suspects who appeared to be casing a store for a robbery. One of the suspects walked up the street, peered into a store, walked on, started back, looked into the same store, and then joined and conferred with his companion. The other suspect repeated this ritual, and between them the two men went through this performance about a dozen times. They also talked *990 with a third man, and then followed him up the street about ten minutes after his departure. When the officer identified himself and asked the suspects for their names, the men only mumbled something. In the present case, the defendant Scott was merely walking up and down the sidewalk by himself as if waiting for someone. He didn't mumble but readily explained his presence and produced identification.
Because of the protean variety of observed circumstances which might lead to a stopping, it is difficult to state clearly and precisely what situations are sufficiently suspicious to justify a stop. LaFave, § 9.3, p. 69. However, it is clear that the present case does not fit the mold of any of the typical cases where a reasonable suspicion was found to be present justifying an investigatory stop. The defendant was not carrying or tampering with property under circumstances which suggest that the property might have been obtained unlawfully as in State v. Fauria, 393 So.2d 688 (La. 1981). He was not engaged in any activities justifying a suspicion that he was planning to commit or had committed a theft of or from a vehicle as in State v. Hunter, 375 So.2d 99 (La.1979). Defendant's conduct did not justify a suspicion that he was planning a robbery of a commercial establishment as in Terry v. Ohio, supra. Nor was defendant in an area of a recently committed crime and he neither acted suspiciously nor resembled a description of the perpetrator as in State v. Evans, 388 So.2d 774 (La.1980), and State v. Edsall, 385 So.2d 207 (La.1980). See W. LaFave, § 9.3, 69-71, 82.
Moreover, none of the factors commonly taken into account in determining whether an officer's suspicions were reasonable, but which do not, in and of themselves, justify a stopping for investigation, were present in the instant case. The defendant was not in the area at an unusual or suspicious time; he did not display any furtive actions or flight at the approach of Officer Marinovic; nor did Marinovic have any knowledge that the defendant had a police record of prior arrests or convictions. See W. LaFave, supra, § 9.3.
For the reasons assigned, we conclude that the revolver seized from Alfred was the product of an unreasonable search and seizure. At the time Officer Marinovic seized the defendant and searched him for weapons, the officer did not have reasonable grounds to suspect that the defendant was engaged in criminal activity or that he was armed and dangerous. Accordingly, the trial judge's ruling denying the defendant's motion to suppress is hereby reversed and set aside.
MOTION TO SUPPRESS RULING SET ASIDE; CASE REMANDED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I consider that the observations of the police officer of defendant walking back and forth on the sidewalk for ten or fifteen minutes together with his unsolicited responses upon being approached in an area where numerous street crimes had been committed gave the police officer a reasonable belief that a crime was about to be committed. Hence, I consider that the "stop and frisk" were reasonable under the circumstances. I respectfully dissent.
NOTES
[*] The Honorables Burrell J. Carter, Felix H. Savoie, Jr. and Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.