Thomas **FRAZIER**, Appellant

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2011–SC–000283–DG.

Supreme Court of Kentucky.

Aug. 29, 2013.

Katie L. Benward, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General of Kentucky, Kenneth Wayne Riggs, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice ABRAMSON.

A Boone County jury convicted Appellant Thomas Frazier of tampering with physical evidence, possession of drug paraphernalia, possession of marijuana, carrying a concealed deadly weapon, and criminal littering. Frazier appealed his convictions to the Court of Appeals which reversed and remanded his criminal littering conviction but affirmed the remaining convictions. Frazier sought discretionary review in this Court, arguing that evidence of his offenses was illegally obtained as a result of an unconstitutional pat-down and vehicle search. Agreeing that both the pat-down and vehicle search were constitutionally impermissible, we reverse.

## RELEVANT FACTS

On June 7, 2008, Boone County Sheriff Deputies Mike Moore and Nate Boggs were in an unmarked car in a fast-food drive-thru lane. After witnessing a passenger in the vehicle in front of them throw some trash out of the car window, they decided to follow the vehicle out of the parking lot. When the deputies observed the vehicle make a left-hand turn without using a turn signal, they activated their lights and stopped the vehicle.

The driver, Thomas Frazier, appeared nervous as he provided his license and proof of insurance to the officer. Deputy Moore asked Frazier who the passengers in the vehicle were and where they were going, to which Frazier initially replied, "Does it matter?" At that point, Deputy Moore asked Frazier to exit the vehicle. After moving to the rear of the car, Deputy Boggs conducted a pat-down search of Frazier. During the search, Deputy Boggs felt an object in Frazier's front jeans pocket which he described as "long," "coarse," and "suspicious." When Deputy Boggs asked Frazier what was in his pocket, Frazier replied, "Nothing." After asking Frazier two additional times to identify the object, and receiving the same response, Deputy Boggs pulled open the top of Frazier's pant pocket and observed a plastic bag filled with a leafy, green substance. Suspecting that the bag contained marijuana, Deputy Boggs arrested Frazier and placed him in the back seat of a police cruiser that had arrived during the pat-down search.

The deputies then commenced a search of Frazier's car where they discovered a "tire thumper," a short wooden bat used to estimate tire pressure, beneath the driver's seat.[1] At some point during the search an onlooker approached and notified the deputies that Frazier appeared to be eating something in the back seat of the cruiser. When the deputies reached Frazier, they observed what appeared to be marijuana crumbs on his mouth, shirt, and lap. An additional bag of marijuana was found on Frazier's person at that time. Although the vehicle search failed to yield more drugs or drug paraphernalia, two marijuana pipe screens were found in Frazier's wallet during his booking search at the jail.

A Boone County grand jury indicted Frazier for tampering with physical evidence, possession of drug paraphernalia, promoting contraband, possession of marijuana, carrying a concealed deadly weapon, and criminal littering. Frazier represented himself at trial, where, following denial of his suppression motion, a jury acquitted him of the promoting contraband charge but found him guilty of all of the remaining charges. At sentencing, Frazier was ordered to serve 150 days of a five-year sentence with the balance probated for five years and was assessed a $500.00 fine.

Frazier appealed his convictions to the Kentucky Court of Appeals, raising five issues on appeal. He challenged the constitutional validity of the initial traffic stop, the pat-down of his person and the vehicle search. Frazier also challenged the trial court's competency finding and argued there was insufficient proof relating to the littering charge. In a 2–1 decision, the Court of Appeals reversed Frazier's littering conviction and affirmed all of the other convictions. We granted discretionary review to determine whether the search of Frazier's person exceeded the scope of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20

---

1. A tire thumper is apparently used by commercial drivers to check tire inflation. Frazier was an unemployed licensed commercial driver and had a CB radio under the seat with the tire thumper.

L.Ed.2d 889 (1968), and whether the police had reasonable grounds for believing that evidence of the crime of arrest would be found in Frazier's vehicle at the time the vehicle search was conducted.

## ANALYSIS

### I. The Pat–Down Search Was Unconstitutional.

At the suppression hearing, Deputy Moore contended that Frazier's nervous and evasive demeanor prompted him to ask Frazier to exit the vehicle. Specifically, Deputy Moore stated that Frazier's hands were shaking and he refused to look the officer in the eye as he answered questions. Deputy Moore testified that Frazier was uncooperative when asked where he was going and who else was in the vehicle, replying: "Does it matter?" This caused Deputy Moore to suspect that Frazier "had something to hide," and in the deputy's mind raised "red flags." Deputy Moore acknowledged that, once outside of the vehicle, Frazier explained that he was on his way to pick up his son for a concert, and that his passengers were friends of his son.

Deputy Boggs testified that after the initial traffic stop, he approached the passenger side of the vehicle while Deputy Moore spoke with Frazier. According to Deputy Boggs, Frazier was "verbally belligerent" upon exiting the vehicle, but he could not hear what Frazier was saying. When Deputy Boggs asked Frazier if he had anything illegal on his person, Frazier said he had "nothing" on him. Frazier refused to consent to a search of his person. Deputy Boggs testified that he believed an over-the-clothes frisk for weapons was warranted based on Frazier's nervous behavior and belligerent response to Deputy Moore's question about his destination and passengers. When he advised Frazier that he was going to conduct a frisk for weapons, Frazier was "adamant" that he not be frisked.

Despite Frazier's objection, Deputy Boggs began the pat-down and perceived a "long," "coarse" object that was "hard in nature" in Frazier's front pant pocket. When he asked Frazier what was in his pocket, Frazier responded, "Nothing." Deputy Boggs explained that he clearly felt something in Frazier's pocket, again inquiring what it was. Frazier replied, "It's nothing." When Deputy Boggs asked Frazier to identify the object for a third time, Frazier again stated, "It's nothing." Deputy Boggs then opened Frazier's pant pocket where he observed a plastic bag containing what he believed to be marijuana. Frazier was placed under arrest for possession of marijuana, and Deputy Boggs conducted a more thorough search of Frazier's person. The deputies secured Frazier in the back seat of a police cruiser and commenced a search of the vehicle where they uncovered the tire thumper.

The trial court orally denied the motion to suppress, finding that based on Frazier's behavior during the stop, it was reasonable for Deputy Boggs to conduct a warrantless search of Frazier's person and then the vehicle following the arrest. In a subsequent written order the trial court reasoned that Frazier's conduct gave the deputies a reasonable belief that he posed a threat to himself or others, and that a reasonable person in Deputy Boggs's circumstances could believe that there was a weapon in Frazier's pocket. Agreeing with this analysis, the Court of Appeals affirmed.

In reviewing a trial court's ruling on a suppression motion, an appellate court must first determine if the trial court's factual findings are not clearly erroneous and are supported by substantial evidence. RCr 9.78; *Adcock v. Common-*

*wealth,* 967 S.W.2d 6 (Ky.1998). Findings of facts that are supported by substantial evidence are deemed conclusive. *Id.* A *de novo* review of the trial court's application of the law to the facts completes the analysis. *Id.*

▇▇▇ In the seminal *Terry v. Ohio* decision, the United States Supreme Court held "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search, or a "frisk," of the individual in order to "determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. 1868; *Commonwealth v. Crowder,* 884 S.W.2d 649, 651 (Ky.1994). The *Terry* pat-down search allows the officer to determine if the suspect is unarmed before continuing his investigation and is, therefore protective in nature. *Minnesota v. Dickerson,* 508 U.S. 366, 377, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). If a pat-down search for weapons goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and any evidence obtained will be suppressed. *Adkins v. Commonwealth,* 96 S.W.3d 779, 786–87 (Ky.2003).

▇▇▇ Frazier claims that the frisk of his person was constitutionally impermissible because Deputy Boggs lacked a reasonable suspicion that Frazier was armed and dangerous, and that the continued search of Frazier's pant pocket exceeded the scope of *Terry v. Ohio.*[2] We apply a two-step analysis in evaluating investigative detentions under *Terry v. Ohio:* first, we must determine whether officer had reasonable, articulable suspicion to justify an investigatory stop; and second, if the stop was proper, was the "degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis,* 430 F.3d 345, 354 (6th Cir.2005). As Frazier's arguments align with our scope of review, we will address each in turn.[3]

**A. The officer's belief that Frazier was armed was not reasonable and articulable.**

▇▇▇ As noted, law enforcement officers are permitted to conduct a reasonable search for weapons for their protection regardless of whether they have probable cause to effect an arrest. *Adkins v. Com-*

2. The legality of the initial traffic stop was not challenged on discretionary review. Further, Frazier does not contend that the Court of Appeals erred in determining that the officers acted reasonably in asking him to exit his vehicle. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment).

3. The Commonwealth contends that the scope of the search, precisely Deputy Boggs's opening of Frazier's pants pocket, was not properly presented on appeal. The Court of Appeals referred to the pant pocket intrusion as a fruit of the *Terry* pat-down, but related the issue to the second prong of the *Terry* analysis which addresses the scope of a search. The incriminating evidence was obtained from Frazier's pant pocket, and therefore the intrusion into the pocket must be implicitly included in the Court of Appeals' analysis of the "frisk." Additionally, Frazier's brief to the Court of Appeals posited that the "frisk *and* search" of Frazier's person were illegal, and he went on to identify "the bag of marijuana found *in Frazier's pocket*" as fruit of the illegal search. (Emphasis supplied). In our view, the Court of Appeals' reference to the "frisk" and subsequent discussion sufficiently encompasses both the over-the-clothes pat-down of Frazier as well as the pant pocket search which yielded the incriminating evidence.

*monwealth,* 96 S.W.3d at 786–87. However, there must be "specific and articulable" facts, which with "rational inferences," support a reasonable suspicion that an individual is armed and dangerous in order to justify the pat-down. *Baker v. Commonwealth,* 5 S.W.3d 142, 146 (Ky.1999). In the case at bar, the Court of Appeals found that: "[t]he combination of Frazier's nervousness, his failure to cooperate, his failure to look the officers in the eyes, and his verbal belligerence once outside the vehicle, were sufficient to alert the officers that Frazier may have been a threat."

Frazier contends that the officers had no reason to suspect that he, having been stopped for failing to use a turn signal,[4] was armed and dangerous. Aside from his initial "Does it matter?" response to Deputy Moore's question, Frazier claims that the officers failed to articulate any continued "belligerent" or "uncooperative" behavior on Frazier's part or any facts suggesting he was armed with a weapon.

To reiterate, the facts available to the deputies at the time of the *Terry* pat-down were: 1) Frazier had failed to use a turn signal; 2) Frazier's hands shook as he spoke; 3) Frazier would not make eye contact as he sat in his vehicle; 4) Frazier initially refused to answer Deputy Moore's question about his passengers and destination; 5) Frazier appeared "verbally belligerent" as he exited the vehicle; and 6) Frazier refused to consent to a search.[5] The pertinent inquiry before us is whether the facts available to Deputy Boggs at that moment would convince a reasonable person that the action taken was appropriate. *Baker,* 5 S.W.3d at 146. Based on these facts, we cannot say that the *Terry* frisk was reasonable.

An individual's suspicious or nervous demeanor has generally been perceived by this Court and others as a factor supporting an officer's reasonable suspicion of danger. *Baker,* 5 S.W.3d at 146 (officers suspected that a defendant may be armed after he refused to remove his hands from his pockets); *Adkins,* 96 S.W.3d at 788 (reasonable suspicion existed where a defendant gave false names to officers, appeared to be nervous, and responded with loud profanities). However, we have held that nervous behavior *alone* is an insufficient basis for reasonable suspicion. *Adkins,* 96 S.W.3d at 788 ("Although nervousness alone is insufficient to give rise to reasonable suspicion, it is an important factor in the analysis."); *see also United States v. McRae,* 81 F.3d 1528, 1534 n. 4 (10th Cir.1996) ("We have held that nervousness alone is not sufficient to justify further detention; however, in combination with other suspicious circumstances, it might contribute to a finding of articulable suspicion."). A number of courts have similarly invalidated *Terry* stops and searches when the individual's demeanor is the sole or primary justification for the officer's suspicion. *See, e.g., United States v. Ford,* 333 F.3d 839 (7th Cir.2003); *United States v. Hernandez–Alvarado,* 891 F.2d 1414 (9th Cir.1989); *Franklin v. State,* 913 S.W.2d 234 (Tex.App.1995); *State v. Scott,* 412 So.2d 988 (La.1982); *Rogers v. State,* 206 Ga.App. 654, 426 S.E.2d 209 (1992).

While Frazier may have certainly appeared nervous, and even passively defiant at first, such behavior was insufficient to provide the requisite reasonable suspicion that Frazier had a weapon. Again, the purpose of a *Terry* frisk is protective, not

---

4. Frazier notes repeatedly that he was in a left-turn only lane when he executed the turn that led to the stop.

5. Contrary to the trial court's factual finding, Deputy Boggs testified that Frazier refused to consent to a search of his person.

investigative, *Dickerson,* 508 U.S. at 377, 113 S.Ct. 2130, and to that end, the requisite reasonable suspicion must logically relate to the frisk's protective objective. *See, e.g., Williams v. Commonwealth,* 364 S.W.3d 65 (Ky.2011) (the frisk of a defendant was justified when he was observed with individuals who were openly using drugs and carrying handguns in a high-crime area); *Commonwealth v. Marshall,* 319 S.W.3d 352 (Ky.2010) (an officer's strip search of a defendant was justified when the defendant was encountered in a high-crime area and eyewitnesses informed the police that they observed the defendant hiding a gun in his pants after he was engaged in an altercation at the scene). Here, Frazier's nervous and marginally insolent demeanor was the sole basis for the frisk. While Frazier's refusal to consent to a search may have aggravated the officers, that refusal cannot be considered as a basis for reasonable suspicion of criminal activity, as such a determination would violate the Fourth Amendment.[6]

The Commonwealth insists that Frazier's behavior, particularly his nervous presentation and refusal to answer "simple, reasonable questions" was enough to justify the *Terry* frisk. However, while the officers' testimonies consistently reflected the general impression that Frazier was acting in a nervous manner, they failed to offer specific articulable facts suggesting he was armed and dangerous. For example, Deputy Moore obliquely described Frazier's behavior as raising "red flags" indicating to him that Frazier perhaps "had something to hide." Deputy Boggs described Frazier as acting "belligerent" upon exiting the vehicle, but admittedly did not even hear what Frazier said.

These vague sensations cannot be conflated to create articulable facts. *See United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir.2001) *citing United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("Reasonable suspicion, however, may not be derived from inchoate suspicions and unparticularized hunches."). Further, we cannot accept the Commonwealth's characterization of Frazier as "uncooperative." Despite his initial evasive response to the question of his destination, Frazier ultimately cooperated with the officers by exiting the vehicle and answering their questions about his passengers and their destination. Indeed, the deputies did not testify to any continued "belligerent" behavior after Frazier was asked to exit the vehicle. *But cf., Adkins,* 96 S.W.3d at 787 (suspect was subjected to a *Terry* frisk after behaving nervously, providing officers with a fake name, and responding to questions with loud profanities).

In reaching our conclusion, we are not discounting that an officer's experience and training must be considered when examining the totality of the circumstances. *See Baltimore v. Commonwealth,* 119 S.W.3d 532, 539 (Ky.App.2003). However, the officers here failed to articulate any facts beyond Frazier's nervous demeanor and uncooperative response to an initial question and those facts simply would not lead a reasonable person to believe that he was armed and posed a threat. In fact, the officers' suspicions here were neither reasonable nor articulable. Accordingly, we find that the *Terry* frisk was unconstitutional.

---

**6.** *See United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997) *citing United States v. Manuel,* 992 F.2d 272, 274 (10th Cir.1993) ("The failure to consent to a search cannot form any part of the basis for reasonable

suspicion."). *See also Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (refusal to listen to officer's questions or answer them cannot furnish reasonable, objective grounds for detaining someone).

## B. The intrusion into the pant pocket exceeded the scope of *Terry v. Ohio.*

 Even if the officers had possessed sufficient reasonable suspicion to justify the frisk, the intrusion into Frazier's pant pocket was constitutionally invalid. The second prong of the *Terry* analysis requires a reviewing court to determine whether the "degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis,* 430 F.3d at 354. In the course of a lawful *Terry* frisk, an officer may seize any contraband he finds provided that the illegal nature of the contraband is readily apparent to the plain feel of his hand. *Minnesota v. Dickerson,* 508 U.S. at 375–76, 113 S.Ct. 2130. Simply put, once an officer, without manipulating an object, identifies it by touch as a weapon or contraband, he has the requisite probable cause to perform a more invasive search of the individual's person and seize the object. *Id. See also Marshall,* 319 S.W.3d at 357.

The United States Supreme Court articulated the limitations of the plain feel exception to the warrant requirement of the Fourth Amendment in *Minnesota v. Dickerson.* 508 U.S. at 366, 113 S.Ct. 2130. When the defendant in that case attempted to conspicuously evade police officers by ducking into an alley-way after leaving a "crack house," the officers stopped him and conducted a *Terry* pat-down of his person. *Id.* at 369, 113 S.Ct. 2130. Although the officer felt a small lump in the defendant's jacket, he could not immediately identify it so he squeezed and manipulated the object before finally reaching into the defendant's pocket where he found a small piece of crack cocaine wrapped in cellophane. *Id.* The Supreme Court held that officers may seize contraband detected during the course of a pat-down, so long as the frisk stays within the permissible bounds of *Terry* and the incriminating nature of the object is immediately apparent. *Id.* at 373, 113 S.Ct. 2130. An officer is prohibited from manipulating an object to determine its nature, and any seizure following such manipulation is unconstitutional. *Id.* at 379, 113 S.Ct. 2130. Because the incriminating nature of the cocaine in *Dickerson* was not immediately apparent, the search of the defendant's pocket and resulting seizure were unconstitutional. *Id.*

In *Commonwealth v. Crowder,* 884 S.W.2d at 649, this Court encountered a set of facts similar to those in *Minnesota v. Dickerson:* the defendant was stopped in a heavy drug-traffic area after appearing to deliberately avoid police officers. During a pat-down search, the officer reached into the defendant's pocket to retrieve an object that he believed could have been a small bindle of drugs. *Id.* The object was in fact cocaine wrapped in plastic. *Id.* After applying the *Minnesota v. Dickerson* rationale, this Court concluded that the fruits of the search should have been suppressed because the officer's intrusion into the defendant's pocket was unconstitutional under *Terry v. Ohio. Id.* at 652. Specifically, the fact that the officer did not immediately identify the object as contraband, and could only recognize its illegal character after further exploration of the pocket, propelled the search of the pocket beyond the bounds of *Terry* and into constitutionally impermissible territory. *Id.*

Assuming there was a reasonable suspicion in this case that Frazier was armed (a premise we have rejected) and that a pat-down was justified, the seizure of the marijuana from his pocket would be permissible only if its illicit nature was immediately apparent to Deputy Boggs's plain feel.

However, Deputy Boggs, like the officer in *Crowder*, could not immediately identify the nature of the object when he happened upon it. *See id.* While he described the object as "long," "coarse," "hard in nature," he did not testify to recognizing the object as either drugs or a weapon. In fact, he explained that he opened Frazier's pocket in order to "make sure [there wasn't] a weapon *or some other object* in there."

 Frazier's adamant insistence that there was "nothing" in his pocket does not change our analysis. Officers engaged in an illegal frisk certainly cannot create reasonable suspicion *during* the course of the frisk. A *Terry* frisk focuses on the facts "available to the officer at the moment of the seizure or the search." 392 U.S. at 21–22, 88 S.Ct. 1868. Frazier's initial response to Deputy Boggs's question may have been perceived as a denial that anything was there (*i.e.* "There is *nothing* in my pocket."). However, after Frazier's third reply of "it's nothing," we are more inclined to understand his response as a denial that he had anything illegal, as that was the specific question asked by Deputy Boggs. Regardless of Frazier's intent, his response to Deputy Boggs's question could not be used to bolster or create reasonable suspicion sufficient to justify the intrusion into his pocket.

In sum, even if the officer had acted with reasonable suspicion in initiating the pat-down, he could not immediately identify the nature of the object in Frazier's pocket, and therefore was not legally entitled to open the pocket. The evidence recovered from the illegal pat-down and intrusion into Frazier's pant pocket should have been suppressed by the trial court.

## II. The Vehicle Search Was Unconstitutional.

 Finally, Frazier claims that the trial court erred in failing to suppress the fruits of the vehicle search. After Frazier refused to consent to a search of the vehicle, he was placed in the back of the police cruiser and the officers commenced a search of the vehicle, uncovering the tire thumper beneath the driver's seat.[7] At the suppression hearing, Deputy Boggs testified that he conducted the vehicle search incident to Frazier's arrest. As noted above, the trial court found that the pat-down search of Frazier's person and opening of his pant pocket was justified by the officer's reasonable suspicion Frazier was armed. When Frazier asked for the trial court's ruling as to the validity of the vehicle search, the trial court orally denied the motion to suppress the evidence obtained in the car, stating: "It's my understanding the search of the automobile was done after the arrest."[8] The Court of Appeals affirmed the trial court, concluding that the officers' search of the vehicle was justified under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

 It is well established that warrantless searches of an individual's person are *per se* unreasonable, but for a few specifically well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception is the search incident to arrest, which allows an officer to conduct a warrantless post-arrest search of an arrestee's person as well as all areas within the ar-

---

7. Frazier was indicted and ultimately convicted of carrying a concealed deadly weapon.

8. The trial court's conclusion as to the validity of the vehicle search, while brief, nonetheless equated to a determination that the search was incident to a lawful arrest.

restee's immediate control. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A significant limitation on the search incident to arrest exception in the context of vehicle searches was announced recently in *Arizona v. Gant*.[9]. The *Gant* decision holds:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

556 U.S. at 351, 129 S.Ct. 1710. Several courts have held that drugs or drug paraphernalia found on or near the person of the driver after removal from the vehicle will justify a vehicle search under the "evidence of arrest" language in *Gant. See, e.g., United States v. Page*, 679 F.Supp.2d 648 (E.D.Va.2009); *Hill v. State*, 303 S.W.3d 863 (Tex.App.2009).

In *McCloud v. Commonwealth*, 286 S.W.3d 780 (Ky.2009), this Court held that an officer who witnessed the defendant engaging in a drug transaction while sitting in a vehicle had probable cause to arrest the defendant and conduct a search of the vehicle incident to arrest. We concluded that after the search of the defendant's person yielded drugs and drug paraphernalia, the subsequent vehicle search was permissible because the officer possessed a reasonable belief that more drugs or drug paraphernalia were in the vehicle. 286 S.W.3d at 786. We acknowledged that given the evidence supporting the officer's reasonable belief that drugs were in the vehicle (*i.e.* witnessing the defendant holding drugs in the passenger seat while apparently selling them to a woman and observing a crack pipe on his person), the facts in *McCloud* fit within the restrictions to a vehicle search incident to arrest outlined in *Gant. Id.* at 785. *See also Robbins v. Commonwealth*, 336 S.W.3d 60 (Ky. 2011) (where defendant arrested for drug trafficking, reasonable to conclude his vehicle contained evidence of the offense of arrest).

▮ Here, Frazier was arrested after the officer conducted an unlawful *Terry* pat-down of his person which resulted in the discovery of a bag of marijuana. While, under appropriate circumstances, a vehicle search incident to arrest may be permissible under *Gant* when drugs are found on the driver's person, clearly the arrest must be lawful in the first instance to justify the ensuing vehicle search. *Arizona v. Gant*, 556 U.S. at 338, 129 S.Ct. 1710 ("Among the exceptions to the warrant requirement is a search incident to a *lawful* arrest.") (emphasis supplied). Having concluded that the pat-down search of Frazier that led to his arrest was unconstitutional, we must therefore conclude that the vehicle search incident to that unlawful arrest was also unlawful.

### CONCLUSION

For the foregoing reasons, the trial court erred in denying Thomas Frazier's

---

9. The *Gant* decision was rendered in April, 2009. 556 U.S. at 332, 129 S.Ct. 1710. The order denying Frazier's motion to suppress was entered two months earlier in February, 2009. Nevertheless, we have previously held that *Gant* may apply retroactively. *See Rose v. Commonwealth*, 322 S.W.3d 76, 79 (Ky. 2010); *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (cases involving changes in the interpretation of the Fourth Amendment should be applied retroactively to those cases upon which a decision had not been rendered at the time of the new decision).

motion to suppress. The Opinion of the Court of Appeals is reversed and this case is remanded to the trial court for further proceedings consistent with this Opinion.

MINTON, C.J.; NOBLE, and VENTERS, JJ., concur.
CUNNINGHAM, J., concurs in result only by separate opinion in which KELLER and SCOTT, JJ., join.

CUNNINGHAM, J., Concurring in Result:

I concur in much of the well-written majority opinion, including the result. However, I must disagree that the officer in this case was not justified in removing Appellant from the car and patting him down.

The traffic stops of perfect strangers, especially those of cars loaded with people, always carry unknown dangers. The officer on the ground, who is experienced in detecting unusual and menacing situations, is in the best position to know when danger lurks. It is easy for us here in the distant and secure safety of our chambers to second guess the officer in this case. I refuse to do so.

Deputy Moore and Appellant had legitimate business to transact. The officer was citing the driver of a vehicle for a traffic violation. Even with a partner, this distracts the officer's attention away from his own safety to taking care of the paperwork. He has a right to assure himself that he can do that in safety. He had observed occupants of the car throwing trash from the car. Appellant was both highly nervous and belligerent. It was a good bet that Appellant's mood was not going to improve with the issuance of the traffic citation which would take money out of his pocket.

Of course, there is no legal requirement that people be courteous and respectful to our law enforcement people. In fact, our nation's highest court has even upheld the legality, if not the propriety, of simply speaking in a disrespectful manner to police officers. *City of Houston, Texas v. Hill,* 482 U.S. 451, 460, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). But it is not something we teach our children to do. And, to the credit of our society, almost all citizens—the law-abiding ones at least—are respectful and courteous to our law enforcement officials.

So, it may not be illegal, but it is highly peculiar when we observe a fellow citizen treating our men and women in blue with insolence and rudeness. Let's hope it always remains that way. Such insolent behavior can—as in this case—signal a belligerence that can easily escalate to violence. The officer was standing by the door of a car full of people. The driver, at least, was hateful. Unknowing what weapon might lurk in the midst of them, I would not question the wisdom or legitimacy of having the driver step out of the car and patting him down.

The tragic annals of traffic stop homicides tell of many violent drivers who are not removed from the obscure confines of the car and patted down for safety's sake. The removal of Appellant from the car was permissible. The pat down was permissible. The confiscation of the "coarse" and "kinda hard" object, which could not be adequately described as feeling like a weapon, went too far.

Therefore, I concur in result only.

KELLER and SCOTT, JJ., join.